## S12A0640. WHITAKER v. THE STATE.
### (728 SE2d 209)

CARLEY, Presiding Justice.

After a jury trial, Appellant Tony Orlander Whitaker was found guilty of felony murder and cruelty to children. The trial court entered judgment of conviction for the felony murder and sentenced Appellant to life imprisonment. The cruelty to children charge merged into the felony murder conviction. Appellant appeals after the denial of a motion for new trial.[*]

1. Construed most strongly in support of the verdicts, the evidence shows that on May 17, 1999, Shonda Sweet left her 13-month-old twin sons with Appellant while she ran errands for the day. At some point, Appellant phoned his godmother, Dorothy Williams, asking her to come over to his house. Ms. Williams, noticing that Appellant sounded upset, drove to Appellant's home with her husband Dennis and her daughter Denata. Upon arriving, Appellant asked Ms. Williams to check on Darrius, one of the twins, because he could not awaken him. When Ms. Williams entered the bedroom, she saw Darrius lying face down on the corner of the bed and his lips were purple. Mr. Williams called 911, and Denata attempted to perform CPR on Darrius but had no success. Paramedics arrived and tried to revive the child. Darrius was then taken to the hospital, but he was declared dead on arrival.

Speaking with hospital staff and law enforcement, Appellant reported that Darrius had been ill and indicated that he had heard something fall and found the child on the floor next to the bed. Appellant stated that the child was breathing and that he placed the child back on the bed. Later, when he went to check on Darrius, he

---

[*] The crimes occurred on May 17, 1999, and the grand jury returned the indictment on August 11, 1999. The jury found Appellant guilty on January 12, 2000, and on that same day, the trial court entered the judgment of conviction and sentence. The motion for new trial was filed on February 8, 2000, amended on February 17, 2010, February 22, 2010, and April 29, 2011, and denied on November 21, 2011. Appellant filed the notice of appeal on November 21, 2011. The case was docketed in this Court for the January 2012 term and submitted for decision on the briefs.

saw that the baby was not breathing and that he had been vomiting out of the mouth and nose.

The forensic pathologist who performed the autopsy found swelling and a patterned injury on the back of the head, suggesting that the victim's head was struck on an uneven surface. There were circular bruises on the forehead indicating "grip marks where somebody's grabbed the child's head and squeezed vigorously, or knuckle marks where somebody's rapped a knuckle on the head, or even knuckle marks in terms of punching." The victim also had several fractures in his skull. The pathologist testified that, because the plates in the skull of a 13-month-old child are not yet fully hardened, the cause of the skull fractures must have been a sharp force. The victim also suffered damage to his brain, including hemorrhages and bruising and swelling of the brain itself. The victim had bruises along the buttocks, back, and head. The pathologist testified that these injuries were acute, meaning that they were less than three to four hours old. He concluded that the injuries were caused by blunt force trauma by shaking and impact, with the bruises along the victim's body corresponding with where the victim was likely grabbed. The pathologist also stated that the victim could not have sustained the type and severity of injuries as those found from simply falling off a bed.

Appellant contends that the evidence against him was merely circumstantial and thus the State was required to show that the proved facts excluded " 'every other reasonable hypothesis save that of [his] guilt. . . .' [Cit.]" *Kier v. State*, 292 Ga. App. 208, 210 (1) (663 SE2d 832) (2008). According to Appellant, the proved facts were consistent with his theory that the victim died from injuries related to falling off the bed.

> " ' "(Q)uestions as to reasonableness are generally to be decided by the jury which heard the evidence and where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the appellate court will not disturb that finding, unless the verdict of guilty is unsupportable as a matter of law." (Cit.)' (Cit.) It is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient. (Cit.)" [Cit.]

*Whitus v. State*, 287 Ga. 801, 803 (1) (700 SE2d 377) (2010). Here, it is undisputed that the victim did not have the physical injuries

outlined above when Ms. Sweet left her house on the day of the crime. It is also undisputed that, besides the victim's baby brother, Appellant was the only person present during the hours in which the victim was physically injured and began to show signs of shaken baby syndrome. The pathologist testified that the location and severity of injuries was inconsistent with a mere fall from the bed. "And the jury was not required to believe [Appellant's] version of events, but was authorized to weigh it against the medical testimony. . . . [Cit.]" *Mahan v. State*, 282 Ga. App. 201, 203 (1) (638 SE2d 366) (2006). Therefore, after reviewing the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient to have authorized a jury to find that the State excluded all reasonable hypotheses except that of Appellant's guilt, and to have authorized any rational trier of fact to find Appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Mahan v. State*, supra; *Johnson v. State*, 278 Ga. App. 66, 68 (1) (628 SE2d 183) (2006); *Hood v. State*, 273 Ga. App. 430, 433 (1) (615 SE2d 244) (2005).

2. Appellant contends that trial counsel rendered ineffective assistance of counsel by failing to object to pervasive comments on Appellant's pre-arrest silence. Specifically, Appellant points to testimony elicited by the prosecutor from Department of Family and Children Services investigator Natalie Green, the responding emergency medical technicians, and hospital personnel regarding his failure to seek help for the victim earlier, his failure to claim responsibility for the victim, and his failure to give information in response to queries regarding what had happened to the victim. According to the record, the prosecutor also commented upon this testimony regarding Appellant's pre-arrest silence during opening and closing arguments.

" 'To prevail on a claim of ineffective assistance of counsel, [Appellant] must show both that his trial attorney's performance was deficient and that the deficient performance was prejudicial to his defense. (Cits.) *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).' " *Greer v. Thompson*, 281 Ga. 419, 420 (637 SE2d 698) (2006). However, " 'this Court is not required to address . . . "both components if the defendant has made an insufficient showing on one." (Cit.)' [Cit.]" *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004). The trial court found that Appellant made an insufficient showing on the prejudice prong, and we "must affirm the . . . court's determination of this claim unless 'its "factual findings are clearly erroneous or are legally insufficient to show ineffective assistance of counsel. (Cit.)" (Cit.)' [Cit.]" *Turpin v. Curtis*, supra.

In order to satisfy the prejudice prong, Appellant must show that but for his trial counsel's alleged deficiencies, "there is a reasonable probability that the outcome of the proceeding would have been different. . . . [Cit.]" *Johnson v. State*, 290 Ga. 382, 383 (2) (721 SE2d 851) (2012). As the trial court emphasized, there was strong evidence of Appellant's guilt, including that it was undisputed that Appellant was the only adult caring for the victim when he received his mortal injuries and that Appellant's defense that the baby fell from the bed was not supported by the medical evidence, which showed that the victim's multiple injuries were the result of violent and severe actions. Due to the strong evidence against Appellant, "it is highly probable that any improper argument [or improper testimony] did not contribute to the verdicts. [Cits.]" *Lloyd v. State*, 280 Ga. 187,192 (2) (d) (ii) (625 SE2d 771) (2006). Therefore, Appellant has made an insufficient showing of prejudice and thus his claim for ineffective assistance of counsel must fail. See *Jones v. State*, 288 Ga. 431, 434 (704 SE2d 776) (2011); *Lambert v. State*, 287 Ga. 774, 777 (2) (700 SE2d 354) (2010).

3. In the present case, the original motion for new trial was filed on February 8, 2000. Over ten years passed before the first hearing on this motion took place. Appellant asserts that he was denied his constitutional right to due process because the long delay prevented him from presenting an adequate appeal.

> This Court has recognized that substantial delays experienced during the criminal appellate process implicate due process rights. [Cits.] . . . [We] utilize[ ] an analysis based on the four speedy trial factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972), which are "(l)ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." [Cits.]

*Chatman v. Mancill*, 280 Ga. 253, 256 (2) (a) (626 SE2d 102) (2006). The trial court ruled, and the State conceded, that the first three speedy trial factors are implicated in the present case. As the trial court found,

> [Appellant repeatedly] asserted his appellate right for a motion for new trial, there was a ten year delay caused by inattention to [Appellant's] requests for a motion for new trial by all parties including the trial court. The inattention to [Appellant's] request for a motion for new trial was not deliberate. It resulted from overcrowded dockets, changing attorney assignments for [Appellant], and simple negligence.

However, the trial court found that the inordinate delay did not prejudice Appellant's case.

> "(T)he prejudice necessary to establish a due process violation based on post-conviction direct appeal delay is prejudice to the ability of the defendant to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced the defendant's defenses in the event of retrial or resentencing." [Cit.] " '(A)ppellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different. . . .' (Cit.)" [Cit.]

*Loadholt v. State*, 286 Ga. 402, 406 (4) (687 SE2d 824) (2010). Appellant contends that his appeal has been prejudiced by the long delay because he is unable to assert several ineffective assistance of counsel claims due to trial counsel being unable to remember details of the case. He asserts that trial counsel was ineffective by failing to raise a preexisting medical condition of the victim, by failing to object to the use of a Styrofoam head by the prosecutor to reenact the State's version of what occurred, by failing to request a polygraph examination for Appellant, and by failing to call witnesses who would testify that Ms. Sweet physically abused the victim.

However, a thorough review of the transcript of the hearing on the motion for new trial reveals that trial counsel remembered sufficient details of the case to reply to Appellant's assertions of ineffectiveness. With regard to the prior medical condition, trial counsel testified at the motion for new trial hearing that Appellant's own medical expert agreed with the forensic pathologist who testified at trial that the cause of the victim's death was a homicide and not some alleged mysterious condition of the victim. Moreover, Appellant has not put forth any evidence of what type of medical condition the victim had and how that medical condition would have contributed to the victim's severe, multiple injuries. With regard to the Styrofoam head, trial counsel testified that he believed that the use of the Styrofoam head for demonstrative purposes was not objectionable, and, in any event, he testified that his strategy was not to object to every little thing but only to that which he felt was of great import, and, in his view, the use of a Styrofoam head did not meet that standard. Additionally, trial counsel testified that the reason for not administering a polygraph is that he believed Appellant would fail and counsel would have had to turn the results over to the State during the discovery process. Finally, as to failing to call certain witnesses, any evidence that the mother abused the child in the past

would have been irrelevant because the injuries were acute and Appellant was the only adult present during the time these injuries were administered. Moreover, Appellant has failed to show that the witnesses were available, the substance of the testimony, and whether the testimony would have been admissible. Therefore, the errors that Appellant claims he would have raised on appeal " 'are without merit [and] there can . . . be no prejudice in delaying a meritless appeal.' [Cit.]" *Loadholt v. State*, supra. Appellant's "generalized speculation about the delay's effect on witness memories and evidence is not the kind of 'specific evidence' required to show prejudice in the appellate-delay context. [Cit.]" *Payne v. State*, 289 Ga. 691, 695 (2) (715 SE2d 104) (2011). Therefore, Appellant's due process rights were not violated by the ten-year delay between trial and appeal. See *Owens v. State*, 286 Ga. 821, 826-827 (2) (693 SE2d 490) (2010) (25-year delay); *Pineda v. State*, 288 Ga. 612, 614-615 (3) (706 SE2d 407) (2011) (10-year delay).

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 29, 2012.

*Kevin C. Armstrong*, for appellant.

*Gregory W. Edwards, District Attorney, Arkesia S. Jenkins, Assistant District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General*, for appellee.